PER CURIAM.
The appellant, who was the plaintiff below, is an operator of a Burger King restaurant, licensed or franchised therefor by the appellee-defendant Burger King of Miami, Inc. Under their contract the food offered by the licensee, which is required to meet certain quality specifications, may but need not be purchased by the licensee from the licensor. The contract provided that where such is purchased, from the li-censor the cost shall not exceed the li-censor’s costs of raw materials plus 13 percent.
Appellant filed an action for itself and all other licensees similarly situated, against the licensor company, seeking a declaratory judgment to resolve a dispute as to the meaning of the contract in regard to the amount to be paid by the licensee for such food when purchased from the licensor. The basis of the dispute was the inclusion by the lessor of the cost of processing certain food items sold to the licensee. For example, in the case of lettuce, the licensor purchased the heads, cut out the bad or rotten sections, shredded and bagged the remainder, and sold the bagged product to the licensee. The licensee’s contention was that notwithstanding processing of such a food item, the cost thereof to the licensee should be only the licensor’s cost (plus thirteen percent) of the lettuce, as being the “raw material.” It was the contention of the licensor that the provision of the contract for payment of cost of raw materials (plus thirteen percent) should be construed to apply to the food item as thus processed.
Following trial of the cause the court entered judgment construing the contract and declaring the meaning and intent of the parties to be as contended for by the ap-pellee-licensor. In so holding in the judgment the court stated:
“* * * It has been contended by the plaintiff that the ‘13% clause’ was to be applied on an ‘item by item' purchase and that the defendant was restricted from pricing any product in excess of 13% above the cost of raw materials, regardless of its overall price structure. The defendant contended that the clause was to be applied ‘across the board’ to all food and paper products; that the parties had so conducted themselves during the course of their contractual relations; and that it would not be reasonable or practical from a business or accounting standpoint to interpret the clause as contended by the plaintiff. With the issues thus joined it was left to the Court to determine the correct interpretation of said paragraph #5 and to determine what damages, if any, were sustained by the plaintiff if the Court, through its interpretation of the paragraph in question, had found the defendant in violation thereof. I further find:
* * * * * *
“That the evidence has shown that since the inception of its commissary operation, the defendant has adopted pricing on all of its food and paper products, in order that the price not exceed 13% above its cost of raw materials on an overall ‘across the board’ basis. This practice, the evidence reflects, has been employed by the defendant and was known to the plaintiff even prior to the execution of the franchise agreement in July of 1958. In construing the provisions of paragraph #5, I have considered the evidence with respect to the relationship of the parties at the time of the execution of the contract, their intentions and the objects sought to be accomplished, the obligations they intended to create in light of the subject matter of the contract, the information at their disposal at the time the contract was entered into, the practice which the defendant had been employing at the outset of their contractual relationship and an overall consideration of the intent and purpose of the paragraph in *485 issue in light of the entire contract. I have also considered the conduct of the parties and their subsequent acts following the execution of the contract as a means of determining the interpretation they themselves have placed upon the contract. Considering all of these factors in light of the evidence before me, and considering further that it was my obligation to construe this contract consistent with reason, probability, and the practical aspects of the transaction between the parties (Blackshear Mfg. Co. vs. Fralick [88 Fla. 589], 102 So. 753, Fla.1925), I have concluded that the defendant has construed paragraph 5 fairly and consistentily with custom and practice and such as a prudent man would naturally execute. I have found from the evidence that the defendant has consistently throughout the operation of its commissary, supplied food and paper products at an overall cost which has not exceeded 13% above the cost of raw material. It is further evident to me that had the plaintiff elected to purchase all of its food and paper products used in its business from the defendant, it would not have paid in excess of 13% above the cost of defendant’s raw materials, consistent with, and as contemplated by, paragraph #5 of the License Agreement. I reject the contention of the plaintiff that it was entitled to an interpretation of the paragraph in question, as entitling it to restrict the defendant on a 13% price on an item per item basis, as the same is not consistent with good business practice or accounting procedure as reflected by the evidence, nor have I concluded that such an interpretation was in the contemplation of the parties at the time they entered into the contract.”
Based on that construction of the contract, the trial court held plaintiff had not sustained a loss entitling it to damages.
On appeal therefrom the appellant argues the court improperly construed the contract; that the court’s findings and conclusions were not supported by the evidence; and that the trial court erred in not awarding compensatory damages to the plaintiff.
Upon review of the record and briefs we conclude that the construction placed by the trial court on the disputed provision of the contract was reasonable and consistent with the evidence. In the case of a food material which would require some processing in order to place it in the form in which it would be used as a food item, the licensee purchasing the same would be required to bear the cost of the needed processing after acquisition thereof if such item was not so processed by the licensor before sale to the licensee. Therefore, it does not appear that any ultimate extra expense is experienced by the licensee by having the cost of necessary processing of food products included in the price thereof when purchased from the licensor. There was no showing or contention that the charges made by the licensor for processing food items were unreasonable or excessive.
No reversible error having been demonstrated, the judgment is affirmed.